USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/20/19

JEFFERSON RANDOLFO FLORES ZABALETA,

               Plaintiff,

    - against -

KIRSTJEN NIELSEN, in her capacity
as Secretary of the Department of
Homeland Security, ET AL.,

               Defendants.

17-cv-7512 (JGK)

AMENDED OPINION
& ORDER[*]

JOHN G. KOELTL, District Judge:

The plaintiff, Jefferson Randolfo Flores Zabaleta
("Zabaleta" or "the plaintiff") brings this action against the
defendants -- directors and officers of the Department of
Homeland Security ("DHS") and the United States Citizenship and
Immigration Services ("USCIS") (collectively, "the defendants"
or "the agency")[1] -- alleging that the defendants arbitrarily and
capriciously denied the plaintiff's petition for Special
Immigrant Juvenile ("SIJ") status. The plaintiff alleges that
(1) his SIJ petition denial was based on an arbitrary and
capricious finding that the New York Family Court did not act as

---

[*] The plaintiff has requested minor redactions to the original Opinion
to protect privacy interests. The government did not object. This
Opinion reflects those redactions. The original Opinion is filed under
seal.
[1] The defendants are Kirstjen Nielsen, in her official capacity as the
Secretary of DHS; Thomas Cioppa, in his official capacity as Director
of the USCIS New York City District Office; Barbara Velarde, in her
official capacity as Acting Chief of the Administrative Appeals Office
of the USCIS; and Lee Francis Cissna, in his official capacity as the
Acting Director of the USCIS.

a "juvenile court" when it entered an order making the requisite findings for SIJ eligibility, (2) the agency improperly second-guessed the Family Court's finding that it would not be in the plaintiff's best interest to return to Guatemala, the plaintiff's country of nationality, and (3) the agency violated the Administrative Procedure Act ("APA") and the plaintiff's Fifth Amendment Due Process rights by failing to provide sufficient notice of the bases for the denial. The plaintiff brings his claims under the APA and the Due Process Clause of the Fifth Amendment.

The parties cross-move for summary judgment under Federal Rule of Civil Procedure 56 on all of the plaintiff's claims. For the reasons that follow, the defendants' motion is **denied** and the plaintiff's motion is **granted**.

I.

In deciding a motion for summary judgment under Rule 56, courts "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Gallo v. Prudential Residential Servs. L.P., 22 F.3d 1219, 1223 (2d Cir. 1994). However, where "a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal, and the entire case on review is a question of law."

*Ass'n of Proprietary Colls. v. Duncan*, 107 F. Supp. 3d 332, 344
(S.D.N.Y. 2015) (alteration accepted and quotation marks
omitted). Accordingly, the usual summary judgment standard under
Rule 56 does not apply because the Court need only "address
legal questions" to decide "whether the agency acted
arbitrarily, capriciously or in some other way that violates 5
U.S.C. § 706." *Id.* Nonetheless, summary judgment is appropriate
in APA cases because the questions on review are purely legal
and are "amenable to summary disposition." *Id.* (quotation marks
omitted).

Under the APA, courts review issues of law *de novo*. *See* 5
U.S.C. § 706 ("[T]he reviewing court shall decide all relevant
questions of law . . . ."). Although courts defer to an agency's
reasonable interpretation of an ambiguous statute that the
agency is charged with administering, *see Chevron, U.S.A., Inc.
v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 (1984),
courts must "hold unlawful and set aside agency action[s]" that
are "arbitrary, capricious, an abuse of discretion, or otherwise
not in accordance with law," "in excess of statutory
jurisdiction," or "without observance of procedure required by
law." 5 U.S.C. § 706(2)(A), (C)-(D); *Ass'n of Proprietary
Colls.*, 107 F. Supp. 3d at 344. Deference to the agency is
unwarranted "if the agency has misconceived the law," *see SEC v.
Chenery Corp.*, 318 U.S. 80, 94 (1943), or if "the intent of

3

Congress is clear, . . . for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron, 467 U.S. at 842-43; Cohen v. JP Morgan Chase & Co., 498 F.3d 111, 116 (2d Cir. 2007).

## II.

## A.

Because this case centers on the plaintiff's application for SIJ status, and specifically the agency's authority to withhold consent from a grant of SIJ status, a brief description of SIJ status and the agency's consent authority under the SIJ statute, 8 U.S.C. § 1101(a)(27)(J), is useful.[2]

SIJ status is a form of immigration relief that provides a path to lawful permanent residence for young immigrants who have been determined by a state juvenile court to be victims of abuse, neglect, or abandonment. 8 U.S.C. §§ 1101(a)(27)(J) ("the SIJ statute"), 1255(a), (h); 58 Fed. Reg. 42843, 42844 (Aug. 12, 1993) (SIJ status "alleviates hardships experienced by some dependents of United States juvenile courts by providing qualified aliens with the opportunity to apply for special immigrant classification and lawful permanent resident status,

---

[2] For a more complete description of the legislative and regulatory history of SIJ status, see the Opinion in R.F.M. v. Nielsen, 18cv5068, --- F. Supp. 3d ---- (S.D.N.Y. 2019), which is being issued today.

4

with possibility of becoming citizens of the United States in the future.").

To qualify for SIJ status, the immigrant must be a person:

> (i) who has been declared dependent on a juvenile court located in the United States or whom such a court has legally committed to, or placed under the custody of, an agency or department of a State, or an individual or entity appointed by a State or juvenile court located in the United States, and whose reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law;

> (ii) for whom it has been determined in administrative or judicial proceedings that it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or country of last habitual residence; and

> (iii) in whose case the Secretary of Homeland Security consents to the grant of special immigrant juvenile status . . . .

8 U.S.C. § 1101(a)(27)(J). Once an immigrant successfully petitions for SIJ classification, the immigrant becomes eligible for a visa under 8 U.S.C. § 1153(b)(4) (allocating a certain percentage of visas annually to "special immigrants," including special immigrant juveniles).

The final prerequisite for obtaining SIJ status is that the Secretary of DHS must "consent[] to the grant of [SIJ] status." 8 U.S.C. § 1101(a)(27)(J)(iii). The agency's consent authority has evolved over time with congressional amendments to the SIJ

statute. The consent function was first created in 1997, when Congress added a requirement that the Attorney General expressly consent to the state court order making the findings required for a grant of SIJ status. See Appropriations Act, Pub. L. No. 105-119, § 113, 111 Stat. 2440, 2460 (1997) (amending the SIJ statute). The purpose of the consent requirement was to ensure "that neither the dependency order nor the administrative or judicial determination of the alien's best interest was sought primarily for the purpose of obtaining" immigration relief. H.R. Rep. No. 105-405 at 130, 1997 U.S.C.C.A.N. 2941, 2981 (1997). The consent requirement, however, was "not for making determinations of dependency status," which remained an area of state court expertise. See id.

In December 2008, Congress enacted the William Wilberforce Trafficking Victims Protection Reauthorization Act ("TVPRA"), Pub. L. No. 110-457, § 235, 122 Stat. 5044 (2008) (codified at 8 U.S.C. § 1232). Among other amendments to the SIJ statute, Congress diluted the agency's consent authority by striking the requirement that the Attorney General "expressly consent[] to the dependency order serving as a precondition to the grant of special immigrant juvenile status." Id. § 235(d)(1)(B) (amending the SIJ statute) (emphasis added). The statute now requires that "the Secretary of Homeland Security consent[] to the grant of special immigrant juvenile status." Id. The agency exercises its

consent authority when it either grants or denies an SIJ petition. See Budhathoki v. Nielsen, 898 F.3d 504, 509 (5th Cir. 2018). The plaintiff claims that the agency misused its consent authority when it denied his SIJ petition.

**B.**

The plaintiff was born in Guatemala in 1996. Administrative Record ("AR") 4. His father abandoned him when he was born, id. at 51, and when the plaintiff was a young child his mother left for the United States without him. Id. at 77. When he was ten years old, the plaintiff left his hometown with his cousin. Id. at 3. He traveled by bus to the Guatemala-Mexico border. Id. He then took another bus through Mexico until he arrived near the United States border. Id. The plaintiff entered United States by crawling under an international boundary fence near Sasabe, Arizona. Id.

The plaintiff was arrested by a United States Border Patrol agent on September 10, 2007. Id. at 2. He was transported to the Casa Grande Border Patrol Station for processing. Id. The plaintiff explained that the reason he left Guatemala was that Guatemala had a growing gang population and he feared gang recruitment and violence. Id. at 8-9. The Border Patrol charged the plaintiff with violating § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i) -- which prohibits unlawfully entering the

7

United States -- and initiated removal proceedings. Id. at 55. The plaintiff was released to the care of his mother, who lives in Long Island, New York, on the condition that he report to court for removal proceedings. Suppl. Compl. ¶ 1. The plaintiff was ordered removed by an immigration judge on March 2, 2009. AR 55.

The plaintiff claims that his attorney never informed him of the removal order, and that the plaintiff believed that he had been granted asylum. Suppl. Compl. ¶ 19. Accordingly, the plaintiff has remained with his mother, his stepfather, and his younger brother in Long Island since he was ten years old. Id. ¶ 2.

In 2013, when the plaintiff was almost seventeen years old, he was going through a difficult time with his family and dropped out of school against his mother's wishes. AR 79. In 2013 through 2014, the plaintiff frequented a park that was popular with students at his high school, including students who were members of the MS-13 gang. Id.[3]

In June 2014, the plaintiff was arrested with these two friends when they took him in a car to break and enter another person's home. Id. at 105-06. The next summer, the plaintiff was charged with larceny. Id. at 106. The New York State Criminal

---

[3] The parties dispute whether the plaintiff ever joined MS-13. The defendants claim that the plaintiff is an MS-13 member. Id. at 143-44.

Court in Suffolk County determined that the plaintiff was a youthful offender and sentenced him to five years of probation. Id. at 54. The plaintiff claims that these events were a "wakeup call" and that he knew that he needed to change his life. Id. at 106. The plaintiff entered a rehabilitation program called "Outreach" and became involved with his local church. Id. In a progress update, Outreach reported that the plaintiff had proved his "dedication and motivation" through his successful participation in the program, that he had worked on his relationships with his family, and that he was a "positive role model for younger residents." Id. at 108. When a state court judge discharged the plaintiff from probation, the judge noted that the plaintiff was working seven days a week and maintained two jobs. The court found that the plaintiff doing well and called the plaintiff a "role model." Id. at 112-13.

On April 26, 2016, the Suffolk County Family Court appointed the plaintiff's mother to be his guardian. Id. at 38. Additionally, the Family Court issued an order (the "Special Findings Order") making the predicate findings for SIJ status -- namely, that the Family Court has jurisdiction to make the requisite findings for SIJ status, that the plaintiff has been committed to the guardianship of an individual appointed by a juvenile court, that reunification with the plaintiff's father is not viable due to neglect and abandonment, and that it would

not be in the plaintiff's best interest to be removed to
Guatemala. Id. at 39-40.

In 2016, the plaintiff moved to reopen his removal
proceedings[4] and, on the basis of the Family Court Special
Findings Order, filed the SIJ petition that is the subject of
these motions. Id. at 41.

The USCIS issued a Notice of Intent to Deny the plaintiff's
SIJ petition on March 22, 2017, stating that the Special
Findings Order (1) did not specify that the Family Court had
jurisdiction under state law to make the findings in the order,
(2) did not state whether the plaintiff was declared dependent
on the Family Court or placed under the custody of a state
agency or department or an individual or entity, and (3) did not
provide a reasonable factual basis for the factual finding that
reunification with the plaintiff's father would not be viable
due to neglect and abandonment. Id. at 44-46.

The plaintiff's attorney provided a written response with
attachments, including an Amended Special Findings Order dated
April 13, 2017, that set forth the state law bases for the
Family Court's jurisdiction and a detailed factual basis for the
findings that reunification with the plaintiff's father was not
viable and that removal to Guatemala would not be in the

---

[4] The plaintiff claims that he learned of his previous order of removal
through his present counsel. Suppl. Compl. ¶ 20.

plaintiff's best interest. Id. at 47-51. Specifically, the Amended Special Findings Order stated that the plaintiff's father has failed to provide financial or emotional support from the time of the plaintiff's birth, that the plaintiff's father never provided food, shelter, education, or medical care, and indeed, that the plaintiff had never even met his father. Id. at 51. These facts demonstrated abandonment under New York Social Services Law § 384-b(5)(a) and neglect under New York Family Court Act § 1012(f)(ii).

The Family Court explained that it is not in the plaintiff's best interest to return to Guatemala for a number of reasons, including that the plaintiff left Guatemala when he was ten years old after his physical safety was threatened by gangs, the plaintiff does not have anyone who can provide care for him in Guatemala, the plaintiff's nuclear family lives in the United States, and living in the United States has provided the plaintiff the opportunity to attend school. Id.

On May 5, 2017, a memorandum from a USCIS Task Force Officer was placed in the plaintiff's alien file. Id. at 55-57. That memorandum stated that the plaintiff is a member of the MS-13 gang. Id. at 55-56. The Task Force Officer based the conclusion of gang membership on the fact that the plaintiff had committed crimes with gang members in the past, had been arrested wearing blue and white attire that law enforcement

11

believed to be related to the MS-13 gang, had a tattoo on his left hand -- three dots in a heart -- that law enforcement associated with MS-13, and had been confirmed "hanging out" with members of MS-13.[5] Id. at 56. The memorandum concluded that the plaintiff "should not be afforded any type of immigration services, relief, and benefit or otherwise released from custody pending the outcome of removal proceedings." Id. at 57.

On May 31, 2017, the USCIS denied the plaintiff's SIJ petition. Id. at 62. The USCIS stated that the petition was denied because the Family Court did not have jurisdiction over the plaintiff's custody as a juvenile under state law when it issued the Special Findings Order, and because the Family Court did not make an informed decision when it determined that it is not in the plaintiff's best interest to be returned to Guatemala because the Family Court was not aware of the plaintiff's "gang activities." Id. at 64-65. This was the first time that the plaintiff was informed that the agency considered him to be either a member of or affiliated with MS-13.

---

[5] The plaintiff disputes that he is a gang member and contests many of the facts underlying the agency's conclusion that he is a gang member. For example, the plaintiff contends that his tattoo is not a gang tattoo, but rather a cross, a dot, and a heart which are tributes to his mother, his late grandmother, and time spent in a hospital. See Opp'n at 22. The Court cannot resolve the factual dispute of whether the plaintiff is a gang member or affiliated with a gang on a Rule 56 motion for summary judgment. See Celotex Corp., 477 U.S. at 322-23. Resolution of this factual dispute is unnecessary to the disposition of this motion.

The plaintiff appealed the denial of his SIJ petition to the Administrative Appeals Office ("AAO"). Id. at 66. On October 26, 2017, an interoffice memorandum from the Chief of the Appeals Fraud Branch was placed in the plaintiff's alien file. Id. at 140. That memorandum stated that the plaintiff is a "self-admitted member of MS13" and has been arrested wearing gang attire. Id. Moreover, the memorandum stated that the plaintiff's Probation Officer confirmed that the plaintiff is a member of the MS-13 Parkview Clique located in Brentwood, New York. Id.

On November 1, 2017, the AAO issued a Notice of Intent to Dismiss the plaintiff's SIJ petition appeal. Id. at 141. The AAO stated that the Family Court did not make an informed decision in making its best-interest determination "because law enforcement has identified [the plaintiff] as a gang member, specifically as a member [of] the Mara Salvatrucha (MS-13) gang." Id. at 142. Accordingly, the AAO stated that there was no reasonable factual basis for the Family Court's best-interest determination. Id. Further, the AAO explained its position that "a juvenile court's finding that a particular custodial placement is the best option for a petitioner in the United States does not necessarily establish that a placement in the petitioner's native country would not be in the petitioner's best interest." Id. at 143. The Notice of Intent to Dismiss

identified some, but not all, of the derogatory information against the plaintiff supporting the agency's determination that the plaintiff is a gang member. Id. at 142-43. The AAO did not raise questions about the Family Court's jurisdiction in its Notice of Intent to Dismiss.

On December 26, 2017, the AAO issued a final decision dismissing the plaintiff's appeal. Id. at 191-99. The AAO relied on two bases for the dismissal. First, the AAO explained that the Family Court was not acting as a juvenile court -- a requirement under the SIJ statute -- when it issued the Special Findings Order. Second, the AAO said that the USCIS's consent was not warranted because the Family Court did not provide a sufficient factual basis for its best-interest determination and the Family Court decision was uninformed because the Family Court was not aware of the plaintiff's alleged gang membership. Id. at 193-95. Accordingly, the agency declined to consent to the plaintiff's SIJ petition.

The plaintiff brought this action alleging that (1) the USCIS's determination that the Family Court was not acting as a juvenile court is based on an arbitrary and capricious policy that the defendants adopted without adequate notice under the APA, (2) the agency's use of its consent function with respect to the Family Court's best-interest determination was arbitrary, capricious, and contrary to law, (3) the agency failed to give

the plaintiff sufficient notice of its determination that the
plaintiff is a gang member, (4) the conclusion that the
plaintiff is a gang member is itself arbitrary and capricious,
and (5) the agency's decision violated the Due Process Clause of
the Fifth Amendment. The parties cross-move for summary judgment
on all of the plaintiff's claims.

## III.

### A.

This Court considered the first issue in a related matter,
R.F.M. v. Nielsen, 18cv5068, --- F. Supp. 3d ---- (S.D.N.Y.
2019). The R.F.M. plaintiffs brought that action on behalf of a
class of plaintiffs, including Zabaleta. The Court agreed with
the R.F.M. plaintiffs that the agency's determination that the
New York Family Court is not a juvenile court when it enters
Special Findings Orders for immigrants between the ages of
eighteen and twenty-one was the result of an arbitrary and
capricious policy that was adopted without proper notice under
§ 552 of the APA and should be set aside.[6] Accordingly, Zabaleta
is correct that the AAO decision cannot be sustained on this
basis.

---

[6] See the Opinion in R.F.M. v. Nielsen, 18cv5068, --- F. Supp. 3d ----
(S.D.N.Y. 2019), also issued on March 15, 2019.

In addition to its finding that the Family Court was not acting as a juvenile court, which this Court has already found to be arbitrary and capricious and in violation of law in R.F.M. v. Nielsen, 18cv5068, --- F. Supp. 3d ---- (S.D.N.Y. 2019), the agency based its denial of the plaintiff's SIJ petition on the ground that the Family Court's best-interest determination was not fully informed. The agency held that because the Family Court "was unaware that the [plaintiff] was a gang member," the Family Court's determination that it was not in the plaintiff's best interest to be removed to Guatemala was not sufficiently informed. AR 199. The plaintiff argues that the agency's decision to disregard the Family Court's best-interest determination went beyond the scope of the consent authority that Congress granted to the agency in subsection (iii) of the SIJ statute.

1.

To evaluate whether the agency violated the APA by acting outside the scope of its consent authority, it is important to understand the narrow scope of the agency's consent authority. The USCIS construes its consent function as merely "an acknowledgement that the request for SIJ classification is bona fide," meaning that the state court order was sought to obtain relief from abuse, neglect, abandonment, or a similar basis

under state law, and not primarily to obtain an immigration benefit. AR 220, 289. The agency "relies on the expertise of the juvenile court in making child welfare decisions and does not reweigh the evidence to determine if the child was subjected to abuse, neglect, abandonment, or a similar basis under state law." Id. at 289. In determining if an SIJ petition is bona fide, the agency assesses only whether there is a "reasonable factual basis" for the findings necessary for SIJ status. Id. at 289-90.

The agency finds support for its narrow construction of its consent authority in the 2008 amendment to the SIJ statute. See Pub. L. No. 110-457, § 235, 122 Stat. 5044 (2008) (codified at 8 U.S.C. § 1232). When the TVPRA struck the requirement that the agency "expressly consent[] to the dependency order serving as a precondition to the grant of special immigrant juvenile status," and replaced it with the requirement that "the Secretary of Homeland Security consent[] to the grant of special immigrant juvenile status," Congress decreased the agency's authority under the consent provision. The USCIS Ombudsman explained that by "eliminating the 'express' nature of the consent requirement, [the] TVPRA recognized State court authority and 'presumptive competence' over determinations of dependency, abuse, neglect, abandonment, reunification, and the best interests of children." AR 221 (citation omitted). The Ombudsman opined that it was

inconsistent with the statute for agency officials to seek the "evidence underlying State court dependency orders," and that by questioning whether state courts have made an "informed decision," the agency has caused "requests for documentation that are overly burdensome and intrusive." Id. at 222-23.

The USCIS Policy Manual explains that the agency's consent authority is limited to determining whether the request for SIJ classification is "bona fide," and that the "USCIS relies on the expertise of the juvenile court in making child welfare decisions and does not reweigh the evidence to determine if the child was subjected to abuse, neglect, abandonment, or a similar basis under state law." Id. at 289. Therefore, the "USCIS generally consents to the grant of SIJ classification when the order includes or is supplemented by a reasonable factual basis for all of the required factual findings." Id. at 290. The agency's Policy Manual instructs that, the "USCIS defers to the juvenile court in making [the best-interest] determination and as such does not require the court to conduct any analysis other than what is required under state law." Id. at 288.

The government has freely admitted that there is no comparable case where a court has sustained the USCIS's failure to consent to SIJ status because the USCIS found it unclear whether the state court considered a factor that the USCIS believed was relevant to the state court's determination of

whether the immigrant's removal to his or her native country was in the best interest of the alien. Transcript of the February 25, 2019, argument on the motions ("Tr.") at 69. In the few cases where courts have sustained the refusal of the USCIS to consent to the grant of SIJ status, the state courts had failed to make crucial findings, see, e.g., Reyes v. Cissna, 737 F. App'x 40, 144 (4th Cir. 2018) (per curiam) (consent properly denied where the state court never made any specific factual findings regarding the basis for finding abuse, neglect, or abandonment), or the state court failed to issue an order required by the statute. See, e.g., Perez v. Cissna, 914 F.3d 846, 854 (4th Cir. 2019) (temporary ex parte emergency order did not meet the SIJ statutory requirements); Budhathoki v. Nielsen, 898 F.3d 504, 515 (5th Cir. 2018) (state court issued a child support order rather than a dependency order). There are no cases that the parties have found where a court has upheld a failure to consent where the USCIS sought to second-guess the evidentiary sufficiency of a state court finding by arguing that the state court failed to consider an additional factor. And indeed such a proposition would be contrary to the instruction in the Policy Manual that the USCIS is not to "reweigh the evidence" before the state court. AR 289.

Moreover, the USCIS has not pointed to any authority to show that gang membership is a factor that Congress intended it

to consider when exercising its consent authority. An agency action is "arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider." Motor Vehicles Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). There is no mention of gang membership, or any other similar factor, in the SIJ statute. See 8 U.S.C. § 1101(a)(27)(J). Indeed, the government admitted at the argument of the current motion that gang membership itself would not be a reason for the USCIS to refuse to consent to an SIJ application. Tr. at 70. The government seeks to justify the denial of consent not on the grounds of gang membership itself but rather on the basis that the failure to consider gang membership undercut the Family Court's decision that it would not be in the plaintiff's best interest to be returned to Guatemala. As explained in more detail below, that argument is deeply flawed. But, in any event, the argument is simply an effort to second-guess the evidentiary determination of the Family Court as to whether removal to Guatemala would be in the best interest of the plaintiff -- a decision properly left to the Family Court.

The agency went beyond the scope of its consent function when it second-guessed the Family Court's factual determinations as part of the adjudication of the plaintiff's SIJ petition. By second-guessing the Family Court's best-interest determination,

the agency acted in excess of its statutory jurisdiction and its decision dismissing the plaintiff's SIJ petition should be set aside. See 5 U.S.C. § 706(2)(C).

**2.**

Moreover, the agency has failed to "offer [a] rational connection" between the alleged fact of gang membership or affiliation and the agency's judgment that the Family Court's best-interest determination was uninformed. See Motor Vehicle Mfrs. Ass'n of U.S., 463 U.S. at 56 (quotation marks omitted). Accordingly, for the reasons explained below, the agency's decision was also arbitrary and capricious under 5 U.S.C. § 706(2)(A).

The Family Court determined that it was not in Zabaleta's best interest to return to Guatemala for a number of reasons. Although some of these reasons were gang related,[7] most of them were not. The Family Court emphasized that Zabaleta's nuclear family, including his mother, his stepfather, and his younger brother are all located in the United states and it would not be in Zabaleta's best interest to be separated from them. AR 51. The Family Court added that there are "no family members [in

---

[7] The Family Court stated that Zabaleta initially left Guatemala due to his fear of gangs, and that if he returned, his grandfather would not be able to protect him from gangs. However, the agency did not explain how gang membership or affiliation in the United States would undermine these findings, and these facts form only part of the basis for the Family Court's best-interest determination.

Guatemala] who are willing or able to provide [Zabaleta] with a safe home." Id. The Family Court also explained that Zabaleta's family provides him with his fundamental needs, including medical and dental care and a home to live. Id. Additionally, the Family Court discussed the fact that living in the United States has afforded Zabaleta the chance to attend school and obtain an education, whereas in Guatemala, he was forced to quit school to help around his grandfather's house after his grandmother passed away. Id. In light of all of the facts detailed in the Family Court's order -- most of which are unrelated to gangs -- the Family Court concluded that "it is not in the child's best interest to be removed from the United States to Guatemala." Id.

The defendants have not shown how alleged gang membership undercuts the Family Court's finding that removal to Guatemala would not be in the plaintiff's best interest. The agency's final decision on the plaintiff's SIJ petition -- the AAO's dismissal -- summarily states that, "The Director reviewed [the Family Court's] factual findings and found that the court did not make an informed decision in reaching its best interest determination because law enforcement has identified the [plaintiff] as a member of the Mara Salvatrucha (MS-13) gang." Id. at 195 (emphasis omitted). The AAO continued that because the Family Court discussed the gangs in Guatemala without

22

knowledge of the plaintiff's alleged gang membership in the
United States, the Family Court's best-interest determination
was "not fully informed." Id. at 199.

The AAO, however, did not explain the connection between
the gang allegations and the best interest finding. Indeed, the
AAO acknowledged that it could not determine whether "gang
membership would have resulted in a finding that returning to
Guatemala is in [the plaintiff's] best interest as we do not
have the judicial expertise or authority to make a best-interest
determination under state child welfare law." Id. In other
words, the AAO took a factor -- alleged gang membership -- which
would not be a basis for rejecting an SIJ application, and which
it could not determine would affect that state court findings,
and leveraged it into a denial of consent because it simply did
not know how it would have affected the Family Court decision.
That was arbitrary and capricious.

The AAO made no attempt to explain how gang evidence could
undermine the Family Court's conclusion that it was not in the
plaintiff's best interest to be removed to Guatemala based on
all of the non-gang related reasons that the Family Court
articulated. Indeed, the government conceded at oral argument
that the AAO did not explain whether the plaintiff's alleged
gang membership was relevant to the Family Court's best interest
finding, only that evidence of the plaintiff's alleged gang

membership did not appear to be before the state court. Tr. at
69.

In their motion papers, the defendants attempt to explain a
connection between alleged gang membership and the best-interest
determination that the plaintiff should remain in the United
States and not be removed to Guatemala. The defendants argue
that because the plaintiff

> informed the Family Court that he feared gangs
> in Guatemala, it was not arbitrary or
> capricious for USCIS to consider whether he
> informed the Family Court that the MS-13 gang
> in the United States, which he is a member of
> or at least associates with, is connected to
> the gangs in Guatemala that he claims to fear.

Reply at 2. This speculative argument is unpersuasive, among
other reasons, because it ignores most of the facts on which the
Family Court relied, and because this rationale was not included
in the AAO's decision denying the plaintiff's SIJ petition. See
Wala v. Mukasey, 511 F.3d 102, 106 (2d Cir. 2007) ("[O]ur review
is limited to '[t]he grounds upon which . . . the record
discloses that [the agency's] action was based.'" (citation
omitted)). The agency cannot substitute new reasons for its
decision after the decision was rendered.

Because the agency acted beyond the scope of its consent
authority, considered factors that Congress did not intend it to
consider, and failed to articulate a rational connection between
the gang allegations and its decision to deny the plaintiff's

SIJ petition, the agency's decision should be set aside.[8] See 5
U.S.C. § 706(2)(A), (C).

**CONCLUSION**

The Court has considered all of the arguments of the
parties. To the extent not specifically addressed, the arguments
are either moot or without merit. For the reasons explained
above, the defendants' motion for summary judgment is **denied** and
the plaintiff's motion for summary judgment is **granted**. The
Clerk of Court is directed to close the motions at Docket
Numbers 57, 66, and 70.

The plaintiff is directed to submit a proposed judgment and
a supporting brief by **March 22, 2019.** The defendants may respond
by **March 29, 2019.**

**SO ORDERED.**

Dated:    **New York, New York**
        **March 20, 2019**

                                            **John G. Koeltl**
                              **United States District Judge**

---

[8] Therefore, it is unnecessary to consider the plaintiff's arguments
that the agency failed to give the plaintiff sufficient notice of its
determination that the plaintiff is a gang member, that the conclusion
that the plaintiff is a gang member is itself arbitrary and
capricious, and that the agency's decision violated the Due Process
Clause of the Fifth Amendment.